

**SO ORDERED.**

**SIGNED this 11 day of April, 2008.**

Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use and print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

**LINA BUCHANAN GUEBERT ,**

                **DEBTOR.**

**CASE NO. 07-41165
CHAPTER 13**

**MEMORANDUM OPINION
DENYING DEBTOR'S MOTION TO VACATE DISMISSAL AND
ORDERING THAT PRIOR DISMISSAL IS WITH PREJUDICE**

Following an evidentiary hearing on February 25, 2008, the Court took under advisement

the Court's Order to Show Cause why Case Should not be Dismissed with Prejudice[1] and the

Debtor's Motion to Vacate Order of Dismissal.[2]  Having considered the record of this Chapter13

case, the testimony presented, the exhibits admitted, and the arguments of the Chapter 13

Trustee, the Court hereby denies the motion to vacate the dismissal and orders that the order of

---

[1] Doc. 94.

[2] Doc. 102.  The motion also moves to vacate the order for show case.

dismissal entered on December 14, 2007[3] is with prejudice and, in particular, enjoins the Debtor

from the filing an another case under Title 11 for 180 days from December 14, 2007 and forever

bars discharge of the claims of creditors Kansas State Federal Credit Union (hereafter KS Credit

Union) and Caremark Therapeutic Services, Inc. (hereafter Caremark) in any case under Title 11

filed by Debtor, either alone or jointly, after dismissal of this case, pursuant to 11 U.S.C. § 349.

**PROCEDURAL HISTORY REGARDING MOTION TO DISMISS WITH PREJUDICE.**

This case was filed pro se on August 24, 2007. Jan Hamilton is the Chapter 13 Trustee.

On November 26, 2007, three motions to dismiss case came on for non-evidentiary hearing: (1)

Trustee's Objection to Confirmation and Motion to Dismiss, filed September 17, 2007;[4] (2)

Trustee's Motion to Dismiss, filed September 28, 2007,[5] as amended on September 28, 2007;[6]

and Trustee's Motion to Dismiss Case with Prejudice and to Deem Debts Nondischargeable, filed

October 19, 2007.[7] Also before the Court was the Debtor's motion to convert case to a Chapter 7

or, in the alternative, to abate payments.[8] Jan Hamilton, the Chapter 13 Trustee appeared in

person, pro se. Creditor KS Credit Union appeared by Thomas A. Valentine, its attorney.

Creditor Caremark appeared by Todd B. Butler, its attorney. The Debtor did not appear.

---

[3] Doc. 94.

[4] Doc. 30.

[5] Doc. 44.

[6] Doc. 47.

[7] Doc. 55.

[8] Doc. 52.

2

On December 14, 2007, the Court issued an Order Dismissing Case and Order to Show Cause why Case should not be Dismissed with Prejudice.[9] For the reasons stated in the order, the motion to dismiss filed October 19, 2007, was granted and the other two motions denied. As to the portion of the Chapter 13 Trustee's October 19, 2007 motion that the case be dismissed with prejudice and that certain debts be deemed nondischargeable, the December 14, 2007 order states:

> The court stated at the November 26, 2007 hearing its inclination that this case be dismissed with prejudice. However, because no evidentiary hearing was conducted on the merits of the motion to dismiss which was granted (Doc. 55) with regard to the relief requested beyond dismissal, the Court took under advisement the issue of ordering the dismissal with prejudice.
>
> The Court hereby orders that the Debtor show cause why the Court should not grant the Trustee's motion (Doc. 55) pursuant to 11 U.S.C. § 1307 that the dismissal be with prejudice and in particular enjoin Debtor's filing of a case under Title 11 for 180 days from the date of such dismissal with prejudice and forever bar discharge of the claims of creditors Kansas State Federal Credit Union and Caremark Therapeutic Services in any case under Title 11 filed by Debtor after dismissal of this case, pursuant to 11 U.S.C. § 349.

A hearing was scheduled for January 28, 2008 at 1:30 PM, and notice was sent to Debtor. Debtor responded with a Motion to Vacate Order of Dismissal and Order for Show Cause Hearing.[10] That motion was also set for hearing on January 28, 2008. Debtor moved to continue the hearing.[11] The motion was granted, and the matters were reset for February 25, 2008.

---

[9] Doc. 94.

[10] Doc. 102.

[11] Doc. 115.

3

At the hearing on February 25, 2008, the Chapter 13 Trustee, Jan Hamilton, appeared in person and by Teresa Rhodd. Creditor KS Federal Credit Union appeared by Thomas A. Valentine. Creditor Caremark appeared by Todd Butler. There were no other appearances. The Debtor did not appear, and no counsel entered an appearance on her behalf. The Court admitted the Trustee's exhibits 1 through 77,[12] heard the testimony of counsel who represented KS Credit Union and Caremark in this and related bankruptcy cases, admitted exhibits prepared by such witnesses, and heard the arguments of the Trustee. The Court took the matter under advisement and is now ready to rule.

**FINDINGS OF FACT.**

Debtor Lina Buchanan Guebert (hereafter Debtor or Lina) filed this Chapter 13 case pro se on August 24, 2007. In November 2007, Debtor was employed as manager of a sportswear store, earning approximately $60,000 per year. For many years prior to 2007, Debtor had been employed as a school teacher. As of the date of filing, her husband was unemployed, although had previously been engaged in the business of insurance sales. Debtor and her husband are intelligent and articulate, and do not suffer from any disabilities or serious health problems of which the Court is aware.

---

[12] Debtor stipulated to admission of these exhibits. In paragraph 6 of Doc. 124, she stated in part:

> . . . Debtor is willing to stipulate, through a Court Order filed either by her, or by the Trustee, Jan Hamilton, that the documents the Trustee submitted to her on or about January 23, 2008 can be entered as admitted to the record in their entirety, dealing the Debtor's past involvement in Bankruptcy cases . . ..

4

At her 341 meeting, Debtor stated that when preparing the pleadings in this case she was assisted by her husband, Jeffery Daniel Guebert (hereafter Jeffery).[13]  Debtor did not have an attorney assist her in this case or in her prior bankruptcies filed in 1998, 2001, 2003, 2004, 2006, and 2007, except as to one specific issue in one of the prior cases.  The Court is convinced that Jeffrey has been assisting Debtor in all aspects in this and prior cases.  Although not trained or licensed as an attorney, Jeffrey Guebert has many times attempted to appear on his wife's behalf, and the Court has been required on multiple occasions to prohibit him from doing so.  The Chapter 13 Trustee has adopted a firm policy of not considering any correspondence from Jeffrey on behalf of Lina.

This Debtor, either alone or jointly filing with her husband, has been a party to at least 12 bankruptcy cases filed from 1986 though 2007, as listed below.  Additionally listed are cases filed by Jeffrey Guebert only.

| Case # | Joint/Single | Filed | Dismissed/ Discharged | Date Discharged Or Dismissed |
|---|---|---|---|---|
| 86-40491-13 | Joint | 04-14-86 | Dismissed | 02-17-87 |
| 88-40053-13 | Joint | 01-15-88 | Dismissed | 06-01-88 |
| 89-40846-13 | Joint | 06-15-89 | Discharged,  after conv to ch 7 | 09-04-91 |
| 92-11339-13 | Joint | 04-22-92 | Dismissed | Not known |
| 92-21968-13 | Joint | 09-17-92 | Dismissed | 01-15-93 |
| 98-20408-13 | Joint | 02-18-98 | Discharged,  after conv to ch 7 | 12-30-99 |
| 01-12752-13 | Joint | 07-08-01 | Dismissed w/prej | 01-16-02 |
| 02-22070-13 | Jeffrey | 06-14-02 | Dismissed w/prej | 6/18/02 |
| 03-21873-13 | Lina | 05-8-03 | Dismissed w/prej | 10-7-03 |
| 04-22090-13 | Lina | 05-19-04 | Dismissed w/prej | 08-11-05 |

---

[13] Lina and Jeffrey are referred to jointly as Debtors with respect to joint their bankruptcy cases.

5

| | | | | |
|---|---|---|---|---|
| 04-24487-13 | Jeffrey | 10-21-04 | Transferred Wichita Case #05-12690 | |
| 05-12690-13 | Jeffrey | 10-21-04 | Transferred -Topeka Case #05-41528 | |
| 05-41528-13 | Jeffrey | 10-21-04 | Dismissed | 8/15/05 |
| 05-42988-7 | Jeffrey | 9/9/05 (ch 13) converted 1/27/06 | Discharged, after conv to ch 7 | 07-28-06 |
| 06-40055-13 | Lina | 02-09-06 (ch. 7) converted 6/9/06 | Dismissed | 10-24-06 |
| 07-40132-13 | Lina | 02-09-07 | Dismissed | 03-01-07 |
| 07-41165-13 | Lina | 8/24/07 | Dismissed | 12-14-07 |

The history of the cases filed during 2002 and later shows a pattern of misuse of the bankruptcy process, to the particular detriment of creditors Caremark and KS Credit Union. Case 01-12752, a joint case, was dismissed on January 16, 2002, for unreasonable delay by the Debtors that was prejudicial to creditors pursuant to § 1307(c)(1), for failure to commence making timely plan payments as required by §§ 1326 and 1307(c)(4), and for failure to comply with debtors' duties under § 521(3) and (4). Pursuant to § 109(g), the Court barred both Debtors from refiling a bankruptcy case in the State of Kansas for 180 days from January 2, 2002.

Case 02-22070 was filed by Jeffrey on June 14, 2002 and was dismissed with prejudice four days later. The order of dismissal states in part:

> The debtor, Jeffrey Guebert, filed a petition in bankruptcy in the above-captioned case on June 14, 2002. Previously, on January 16, 2002, Judge Nugent entered an order in Case No. 01-12752-13, dismissing another bankruptcy case of this debtor. Judge Nugent ordered that the debtor was barred from re-filing another bankruptcy case for 180 days from January 2, 2002 because debtor had "wilfully failed to abide by Orders of the Court."
>
> Debtor has a long history of filing bankruptcy cases. . . .
>
> This court finds that debtor's filing the instant case within 180 days of Case No. 01-12752-13, in contravention of Judge Nugent's order and § 109(g) of the Bankruptcy Code, constitutes an abuse of the bankruptcy

6

> system and warrants imposition of sanctions. The court further finds that
> by debtors' actions in contravention of Judge Nugent's order, debtor has
> wilfully failed to abide by order of the court, and the above-captioned case
> should be dismissed.

Pursuant to § 109(g) the court barred debtor from refiling for 180 days from June 18, 2002 and ordered debtor to pay the Clerk of the Court $1000 in sanctions. The clerk's office has no record of payment.

On September 5, 2002, Lina and Jeffery Guebert borrowed $16,041.38 from KS Credit Union, secured by a purchased money security interest in a 2000 Chrysler Sebring. On September 26, 2002, Lina and Jeffrey Guebert borrowed $6,844.38 from KS Credit Union, secured by a purchase money security interest in a 1996 Mercury Grand Marquis.

The next bankruptcy case, Case 03-21873 was filed by Lina alone on May 8, 2003. On motion of the Chapter 13 Trustee, it was dismissed on October 7, 2003. The dismissal was for failure to comply with orders of the court by "not appearing at the 341 hearing, not making plan payments and not filing tax returns as required by the local rules." The dismissal was with prejudice to filing within 180 days and the court further held that "this debtor may not file a bankruptcy until tax returns have been filed for the years 1999, 2000, 2001 and 2002."

On February 27, 2004, creditor Caremark obtained a state court judgment against Lina. The judgment arose from Lina's failure to turn over to Caremark money she received from an insurance company earmarked for payment to Caremark as reimbursement for services Caremark had provided to her. Although Caremark also sought a judgment against Jeffrey, as a responsible party under Kansas law, the state court limited the judgment to Lina. To enforce the judgment, Caremark obtained a wage garnishment against Lina on April 26, 2004. Less than 30 days later, on May 19, 2004, Debtor Lina Guebert again filed under Chapter 13, and the proceedings were

7

assigned Case 04-22090-13. On May 21, 2004, a motion and order for relief from garnishment were filed. The Chapter 13 case was dismissed with prejudice on August 11, 2005, with a bar from filing for 180 days, for default in plan payments. According to the Motion to Dismiss filed by William Griffin, Chapter 13 Trustee in that case, Debtor also failed to appear for at least one 341 hearing during that case.

The next case was filed by Jeffery on October 21, 2004, as a Chapter 13, Case 04-24487-13, in Kansas City. The case was transferred to Wichita and assigned a new case number, Case 05-12690. The case was later transferred to Topeka and assigned a new case number, Case 05-41528. KS Credit Union filed a motion for relief from stay, alleging that it was a secured creditor, that Debtor had not given it notice of the filing or included it in the proposed plan, that the payoff as of June 17, 2005 was $28,056.17, that the claim was secured by perfected security interests in a 2000 Chrysler Sebring (in creditor's possession) and a 1996 Mercury Grand Marquis in possession of the Debtor. The case was dismissed without prejudice by order filed on August 15, 2005, before a ruling on the motion for relief from stay.

On August 23, 2005, upon the request of Caremark, an order of garnishment for wages of Lina was entered. Jeffrey filed a new case, Case 05-42988-13, on September 9, 2005, less than 30 days after the prior dismissal and issuance of the order for garnishment of the wages of his wife. Shortly after filing, on September 13, 2006, Jeffery filed a motion for relief from garnishment orders of two creditors, including by Caremark against Lina, who was alleged to be a co-debtor. The Court denied the motion for release, finding there was no co-debtor stay since Jeffrey's plan did not propose to pay Caremark. The KS Credit Union filed a proof of claim for $28,676.01, secured by the 2000 Chrysler Sebring in possession of the Creditor and the 1996

8

Mercury Grand Marquis. On October 25, 2005, KS Credit Union filed a motion for relief from stay, seeking permission to sell the 1996 Mercury Marquis, to foreclose its statutory lien on the Gueberts' share account, and to proceed against co-maker Lina Guebert. After sale of the 2000 Chrysler, KS Credit Union filed an amended proof of claim for $24,176.01, secured by a 1996 Mercury Grand Marquis, stated to have a value of $3,825.10. The Chapter 13 Trustee's motion to dismiss for default in plan payments and unreasonable delay in providing the Trustee with Debtor's employer's address was granted on December 22, 2005. On December 30, 2005 pursuant to the request of Caremark, the state court issued a garnishment order for wages of Lina. Jeffrey's motion to reconsider the dismissal was granted, and on January 23, 2006, the bankruptcy case was reopened under Chapter 7. Although still pending, the case is substantially completed.

On February 9, 2006, less than 40 days afer the reinsurance of the garnishment order for the benefit of Caremark, Lina again filed for relief, Case 06-40055-7. On February 22, 2006, Lina filed a motion to release garnishment, but Caremark had already released the garnishment order. The United States Trustee filed a motion to dismiss because the Debtor was ineligible to receive a discharge, such that her case should be dismissed pursuant to § 707(a) and § 105(a). On June 1, 2006, the court granted Debtor 10 days to convert to Chapter 13, or else the motion to dismiss would be granted without notice or hearing. Debtors filed a motion to convert to Chapter 13, which was granted. The Chapter 13 Trustee moved to dismiss for default in plan payment and failure to provide Trustee with copies of 2005 federal and state income tax returns. The motion was granted, and the case was dismissed without prejudice on October 24, 2006.

9

On December 18, 2006, Caremark again obtained an order for garnishment of Lina's wages. Less than 60 days later, Lina filed Case 07-40132-13. Caremark again released its garnishment. KS Credit Union filed a proof of claim for $5,898.22, secured by the 1996 Mercury Grand Marquis. The Chapter 13 case was dismissed by order filed on March 1, 2007, for failure to seek credit counseling prior to filing. On March 13, 2007, Caremark obtained a garnishment order in state court.

Lina filed the present case pro-se, but with the assistance of Jeffrey Guebert, on August 24, 2007. The activities of Debtor in the case are too numerous to state completely, but are evidenced by the docket sheet. When filing, Debtor moved to pay filing fees in installments,[14] but the motion was denied.[15] Debtor's schedules, filed September 11, 2007, lists unsecured claims of $35,000 owed to 13 creditors, including Caremark ($15,000), KS Credit Union (amount unknown), Kansas Department of Revenue ($20,000), and others with unknown amounts. The schedules show no secured creditors and an unsecured priority tax claim for $22,000 owed to the IRS. A proposed Chapter 13 plan was filed[16] Debtor was ordered to make monthly payments of $365 to the Trustee.[17] Objections to the Chapter 13 plan were filed by the Trustee.[18] Debtor failed to appear for two 341 hearings,[19] scheduled for September 27, 2007 and

---

[14] Doc. 3.

[15] Doc. 7.

[16] Doc. 21.

[17] Doc. 22.

[18] Docs. 28 and 30.

[19] In addition to her failure to appear at numerous scheduled 341 hearings in this and prior cases, the Court notes that Lina Guebert failed to appear at any, save one, of the multitude of hearings scheduled on

10

October 11, 2007, although she finally did appear on November 8, 2007, after the Trustee had on October 18, 2007 filed a motion to compel attendance.[20] The Trustee filed several motions to dismiss without prejudice for failure to pay filing fees,[21] failure to appear at scheduled 341 hearings,[22] failure to make plan payments,[23] and failure to provide copies of 2006 tax returns.[24] Debtor filed a motion to modify plan payments or to convert to Chapter 7.[25] Even though Caremark had voluntarily released a garnishment order, on October 18, 2007, Debtor filed a motion to stop garnishment as to Caremark and another creditor.[26] The KS Credit Union filed a proof of claim for $6,784.71, secured by the 1996 Mercury Grand Marquis, valued at $3,800. It also objected to confirmation of Debtor's plan, which did not account for the value of the KS Credit Union's secured claim.[27] Debtor objected to KS Credit Union's claim, asserting she had no interest in the Mercury, which she stated was titled in the name of Jeffrey Guebert.[28] The KS Credit Union amended its proof of claim to unsecured and moved for relief from stay to recover

---

various issues in the five she has filed since 2003.

[20] Doc. 50.

[21] Doc. 10.

[22] Doc. 44.

[23] Doc. 44.

[24] Doc. 30.

[25] Doc. 52.

[26] Doc. 53.

[27] Doc. 74.

[28] Doc. 79.

11

the vehicle from Jeffrey Guebert.[29]  An order lifting the stay to proceed against Debtor's co-maker, Jeffrey Guebert, and others to recover the Mercury was entered on December 10, 2007.[30]  As of the date of the evidentiary hearing, the KS Credit Union had not taken possession of the Mercury.  During the pendency of the case, Debtor made no plan payments to the Trustee.

The KS Credit Union incurred attorney fees and expenses of approximately $1,900 in this and the prior case filed by Lina.  Of course, it also incurred additional fees and expenses in the cases filed by Jeffrey.  Caremark's counsel is retained on a contingency fee basis, so Caremark's counsel, rather than Caremark, is bearing the cost of the multiple bankruptcy cases.

As stated above, the motion to dismiss with prejudice in this case was filed by the Chapter 13 Trustee on October 19, 2007.[31]  It alleges that Debtor is a serial filer, has a history of not complying with Court orders and during this case has not made required plan payments, has not proposed a feasible plan, and has failed to provide a copy of her 2006 federal and state income tax returns.  Trustee further alleges that Debtor's sole purpose for filing this case was to delay creditors and that her repetitive filings and dismissals for failure to adhere to the Code and Court orders "rise to the level of bad faith that is prejudicial to her creditors."  Because the 180-day filing bar previously imposed has not deterred Debtor's abuse of the bankruptcy system, the Trustee requests the Court pursuant to § 349(a) to issue an order permanently disqualifying from discharge those debts which Debtor seeks to discharge in this case.  Because Debtor "has perfected the art of delaying payment of her filing fees and effectively received bankruptcy

---

[29] Doc. 81.

[30] Doc. 90.

[31] Doc. 55.

12

protection for over a month before paying the required fees," the Trustee requests an order that if Debtor in the future files a case without paying fees at the time of filing, that the case be dismissed immediately, *sua sponte*.  Finally, the Trustee alleges that "Debtor has established a pattern of filing her petition for relief, then delaying filing of her Schedules, Statement of Financial Affairs and Chapter 13 Statement of Current Monthly and Disposable Income" and requests that such conduct in future cases result in dismissal, *sua sponte*.  As stated in more detail above, on December 14, 2007, the Court granted the Trustee's motion to dismiss, addressed other pending motions to dismiss, and entered an order to Debtor to show cause why the dismissal should not be with prejudice.

Debtor did not file a response to the Trustee's motion to dismiss with prejudice until after the Court entered the order of dismissal and order to show cause why dismissal should not be with prejudice.  Then Debtor responded with a Motion to Vacate Order of Dismissal and Order for Show Cause Hearing.[32]  In support, Debtor argued that dismissal was improper because Debtor's motion to convert and amended motion to covert were pending at the time of dismissal, that the Court had not allowed the Debtor sufficient time to prepare for hearings because of the slowness of mail notice (as opposed to electronic notice provided counsel), and because creditors had not filed proofs of claim to which Debtor could object.  Debtor did not respond to the allegations that she had misused the bankruptcy process and filed in bad faith.  On the day of the show cause hearing, Debtor filed a Motion to Dismiss Debtor's Case without Prejudice,[33] but she did not appear at the hearing to present a defense.

---

[32] Doc. 102.

[33] Doc. 124.

13

**ANALYSIS AND CONCLUSIONS OF LAW.**

The authority to dismiss a Chapter 13 case upon motion of the Trustee for cause is found in 1307(c).  It provides that "on request of a party in interest . . . and after notice and a hearing, the court may . . . dismiss a case . . .  for cause, including" eleven enumerated circumstances.  In the Tenth Circuit, a case may be dismissed for lack of good faith filing, and the *Flygare*[34] factors applicable to denial of confirmation for lack of good faith under 1325(a)(3) are applicable.[35]

As stated above, the Court has previously on the record found cause for dismissal. Debtor's motion to vacate that order is denied.  The dismissal is authorized under § 1307(c) for failure to commence making timely payments under § 1326 and failure to timely file a confirmable plan.  The Court also finds lack of good faith in filing this case, as evidenced by many facts, including: Filing for the purpose of defeating the Caremark garnishment orders; the frequency with which Debtor alone, or in conjunction with her husband, has filed for Bankruptcy relief; and failure to abide by Court orders, such as not attending scheduled § 341 hearings and not providing copies of tax returns.  Because the foregoing provides grounds for dismissal and because Debtor had more than adequate notice of the proceedings on the motions to dismiss, as well as her motion to convert, but failed to appear, the Court denies Debtor's motion to set aside the dismissal order.

As to dismissal with prejudice, there are two sections of the Code which address the consequences of dismissal.  Section 109 (g) provides:

> (g) Notwithstanding any other provision of this section, no
> individual or family farmer may be a debtor under this title who

---

[34] *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983).

[35]  *In re Norton*, 319 B.R. 671 (Bankr. D. Utah 2005).

14

has been a debtor in a case pending under this title at any time in the preceding 180 days if--

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

The effect of dismissal is addressed by § 349.  Subsection (a) provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Thus, the Code allows two types of prejudicial dismissal:  (1) Dismissal with prejudice to the subsequent filing of a case under Title 11 pursuant to § 109(g); and (2) by negative implication, dismissal with prejudice as to the dischargeability of debts that were dischargeable in the dismissed case.

In the Tenth Circuit, § 349(a) is construed with § 109 to preclude a bankruptcy court from ordering dismissal with a bar to filing a subsequent case for a period in excess of 180 days.[36] A bankruptcy court's denial of access to bankruptcy courts for more than 180 days is beyond the authority conferred by § 349(a) and cannot stand.[37]  There is no similar statutory or case limitation with respect to dismissal with prejudice as to future discharge of debts scheduled

---

[36] *Frieouf v. United State (In re Frieouf)*, 938 F.2d 1099 (10th Cir. 1991).

[37] *Id.*

15

in the dismissed case.[38] The Tenth Circuit has allowed for cause the disqualification of a class of

debts from future discharge, at least for a period of three years.[39] In *Norton*,[40] where the case

trustee and the United States Trustee both moved for dismissal with prejudice, the dismissal was

with prejudice as to the future discharge of all debts dischargeable in the dismissed case. The

Court therefore finds it has authority to limit the prejudice to future discharge to certain debts

and to provide that such injunction shall be permanent.

"Dismissal with prejudice is a severe sanction to which the courts should resort only

infrequently."[41] Prejudicial dismissal under § 349(a) must be premised upon bad faith conduct

that is prejudicial to a creditor.[42] This standard is different from the standard for dismissal for

cause using the enumerated statutory grounds, which do not require either bad faith or prejudice

to creditors.[43] Even when a case is dismissed for cause under the *Flygare* criteria more is

required for dismissal with prejudice.[44] When affirming the barring of a subsequent discharge of

---

[38] In an unpublished opinion, *In re Cooper*, 13 F.3d 404 (table), 1993 WL 523197 (10th Cir. 1993), the court affirmed sanctions, which included a permanent injunction of the debtors from attempting to discharge the debt owed to a single creditor. On appeal, the Tenth Circuit rejected debtor's argument that § 349(a) does not apply to Chapter 13 cases. The authority to "cherry pick" the debts subject to dismissal with prejudice is not discussed.

[39] *In re Frieouf,* 938 F.2d at 1103.

[40] *In re Norton*, 319 B.R. at 671.

[41] *In re Hall*, 887 F.2d 1041, 1045 (10th Cir. 1989).

[42] *In re Frieouf*, 938 F.2d at 1104.

[43] *In re Hall*, 887 F.2d at 1041.

[44] *In re Norton*, 319 B.R. at 682.

16

debts for a period of three years, the 10th Circuit in *Frieouf* described the debtor's conduct as follows:

> After carefully reviewing the record, we conclude that several facts and circumstances support the bankruptcy court's conclusion that debtor acted in bad faith and in a manner that was prejudicial to his creditors. First, debtor waited nine months before filing an initial plan of reorganization. Such plan, as noted by the bankruptcy court, was not accompanied by a disclosure statement, and the failure to file a disclosure statement continued for more than a year after the bankruptcy court had explicitly ordered the filing of one. . . . Furthermore, it is significant that subsequent plans of reorganization were submitted by debtor only after motions to dismiss were pending. Finally, on the eve of the hearing provided by the bankruptcy court to give debtor an additional opportunity to show cause why his bankruptcy case should not be dismissed with prejudice, debtor filed a motion seeking continuance of the hearing, but made no effort to confirm whether the motion was ever granted, and then failed to appear. Debtor's overall conduct throughout the proceedings in bankruptcy court evidences a pattern of evasion, and prevented creditors from exercising their rights against debtor for over three years. In view of these facts, we cannot say that the bankruptcy court's findings of bad faith and prejudice were clearly erroneous.[45]

*Norton* held the debtor's latest Chapter 13 case should be dismissed with prejudice to her ability to discharge her current debts in any future bankruptcy.[46]

As to the legal standards for dismissal with prejudice, in the Tenth Circuit two factors must coexist: (1) Bad faith or defiance; and (2) conduct which was abusive or prejudicial to creditors.[47] As to the first, the *Norton* opinion states:

---

[45] *In re Frieouf*, 938 F.2d at 1105.

[46] *In re Norton*, 319 B.R. at 671.

[47] *Id.*, 319 B.R. at 681, *citing In re Hall*, 887 F.2d at 1041.

17

A bad faith determination under § 349(a) is akin to the same determination under 1307(c). . . . The *Flygare* opinion analyzed whether a debtor had filed a Chapter 13 *plan* in good faith under § 1325. There is no companion statute requiring debtors to file *petitions* in good faith--that is when § 349(a) comes into play because it looks beyond a debtor's plan. The comprehensive, retrospective inquiry of § 349(a) includes, among other things, whether plans were filed in good faith, whether petitions were filed for an improper purpose, and whether a debtor fulfilled her statutory requirements. Section 349(a) looks beyond the totality of the circumstances in the current case and reaches back to the circumstances of each prior filing. This Court adopts the *Flygare* factors for this § 349(a) bad faith analysis because those factors offer guidance to the Court in defining what conduct generally constitutes bad faith.

The inquiry, however, does not end with the *Flygare* bad faith analysis because a § 349(a) dismissal must be premised on a debtor's exhibition of additional undesirable or egregious conduct that goes beyond the type of conduct that would justify a "for cause" or bad faith dismissal under §§ 1307 or 1325. Some courts have referred to this conduct as "contumacious" or a "pattern of evasion." This Court also chooses to label this conduct as defiant. The word "defiant" is defined as "bold resistence to an opposing force or authority." Although successive filings do not necessarily constitute defiant conduct, multiple filings may be evidence of such conduct, as is a debtor's continued failure to actively prosecute her bankruptcy cases.[48]

As to the second factor of prejudice to creditors or abusiveness, the *Norton* opinion states:

A creditor is prejudiced when a debtor, through repeated filings, denies the creditor the opportunity to exercise its contractual rights because of the automatic stay. Abusive serial filing not only denies the creditor certain rights, it allows a "rapacious" debtor to use the automatic stay as a sword against its creditor: this is not the purpose of § 362.[49]

---

[48] *Id.*, 319 B.R. at 681-83.

[49] *Id.*, 319 B.R. at 683-84.

In this case the evidence satisfies both legal standards required for a dismissal with prejudice. Debtor has acted with bad faith within the meaning of § 329(a). Most important, the series of at least 15 bankruptcy filings by Debtor and her husband over 20 years exhibits a pattern of defiant conduct. In joint cases filed in 1989 and 1999, they received Chapter 7 discharges. But the other joint cases were dismissed. Although all cases were filed under Chapter 13, there has not been a single case where a plan was successfully completed. One joint case, one case filed by Jeffrey, and two cases filed by Lina were dismissed with prejudice. Since 2003, Lina has filed five cases, the pending case and four others that were dismissed for reasons similar to the reason for dismissal of this case, including not appearing at 341 hearings,[50] not making plan payments, and not providing copies of tax returns. One case was dismissed for not receiving credit counseling. The cases which were dismissed with prejudice reflect conduct similar to the conduct in this case. At the time of this case, Debtor has substantial income, as did her husband in the past when he was employed, and there is no history of medical problems or adverse circumstances, yet Debtor and Jeffrey have avoided payment of their creditors.

The timing of the case filings, by both Debtor and Jeffrey made since Caremark obtained its judgment against Lina in February 2004, as well as the pleadings filed in those cases, clearly establish intent to use bankruptcy for the improper purpose of hindering Caremark's collection of its judgment. Cases were consistently filed shortly after garnishment orders were issued. In these cases, including one filed by Jeffrey alone, motions were filed to terminate the garnishments, even when Caremark had on its own initiative released the order.

---

[50] In addition to her failure to appear at numerous scheduled 341 hearings, the Court notes that Lina Guebert failed to appear at any, save one, of the multitude of hearings schedules on various issues in the five she has filed since 2003.

19

Unlike many pro se debtors, Lina and Jeffrey are educated, skilled, and articulate. They understand the bankruptcy process and exhibit significant sophistication in using the Code to their advantage. Throughout these multiple proceedings, Debtor has not retained counsel, but has relied upon the assistance of her husband, who is not an attorney. The unfounded motions, the inappropriate responses to motions, the frequent requests for continuances, the failures to file schedules and other pleadings timely if at all, the failure to pay various filing fees timely, the failure to appear at 341 meetings, the failure to appear at scheduled court hearings, the failure to file realistic plans in her Chapter13 cases, the repeated attempts of Jeffrey Guebert to appear on Lina Guebert's behalf, and Debtor's total indifference to dealing with her bankruptcy cases demonstrates a complete lack of good faith. These behaviors constitute a deliberate and unconscionable scheme to manipulate and misuse the bankruptcy process. This conduct has resulted in extra work for the Trustee, creditors, and the Bankruptcy Clerk's office.

The Court also finds that Debtor's creditors have been severely prejudiced by this conduct. As to Caremark and KS Credit Union, this case is a vivid example of debtors using the bankruptcy stay as a sword to thwart enforcement of the creditors' legal rights. Caremark has been unable to collect its judgment against Lina or to enforce a claim against Jeffrey under Kansas responsible party law. There is a recurrent pattern of a new bankruptcy being filed shortly after Caremark obtained a garnishment order. The filings required legal action by Caremark but did not bring it closer to payment.

KS Credit Union has been attempting to collect its secured debt, or to at least obtain possession of its collateral, since the filing of Jeffrey's 2004 case. Like Caremark, it has persistently participated in the numerous bankruptcy cases in an attempt to exercise its

contractual rights. Yet, at the time of the show cause hearing in this case, over three years later, it had successfully obtained possession of and sold only the 2000 Chrysler Sebring. Debtor or her husband remained in possession of the 1996 Mercury Grand Marquis, which has been used and lost value as the years have past. KS Credit Union has incurred legal fees and costs from which it received very little in return.

The Court does not hesitate to order that the dismissal is with prejudice to Lina's filing of another case under Title 11 for 180 days from the date of dismissal, December 14, 2007. If the Court were permitted to do so, it would consider barring the filing for a greater period of time. The Court also finds that the abusive conduct in this case warrants an order preventing discharge of debts dischargeable in this case in future bankruptcy cases. The Trustee requests that such an order apply to all debts dischargeable in this case, but the Court finds that an order limited to the claims of Caremark and KS Credit Union is more appropriate. No creditors other than these two have participated in this case. It is because of these creditors' persistence in pursuing Debtor and their devotion of time and resources to exposing the misuse of the Bankruptcy Code that the Court finds their claims should not be dischargeable in a future case. In addition, with the exception of the IRS, Debtor's schedules do not list the amount of other creditors' claims, so the Court cannot evaluate the proposal that the bar to future discharge extend to all dischargeable debts. The Court therefore orders that the dismissal is with prejudice to the discharge in any future case of the claims of Caremark and KS Credit Union.

The Trustee also requests that the dismissal with prejudice provide for dismissal of any future case *sua sponte* if Debtor does not pay required filing fees at the time of filing and if she delays the filing of her Schedules, Statement of Financial Affairs and Chapter 13 Statement of

Current Monthly and Disposable Income. The Trustee has provided no authority specifically authorizing such a condition, and the Court declines to plow new ground in this respect. In the event Debtor files again for bankruptcy relief, this Court, and most likely any other judge in this district, will strictly enforce the Code requirements as to fees and filing requirements, as this Debtor has demonstrated that any benefit of the doubt extended to her has thus far not favorably impacted her cases.

**CONCLUSION.**

For the foregoing reasons, the Court denies the Debtor's motion to set aside the December 14, 2007 order of dismissal and orders that pursuant to § 349(a) and § 109(g) the dismissal of this case is with prejudice to the filing of another case under Title 11 within 180 days of December 14, 2007 and with prejudice to the discharge of the claims of Caremark Therapeutic Services, Inc. and Kansas Federal Credit Union in any future case filed by Debtor, either alone or jointly, under Title 11.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###